STATE OF TENNESSEE, DEPARTMENT )
OF CHILDREN'S SERVICES, )
                                      )     **Davidson Juvenile**
       **Petitioner/Appellee,**     )     **File Nos.   08-04-58**
                                        )                      **9419-11131**
**VS.**                                  )                      **9419-11130**
                                        )
**AMY DIANE BOTTOMS and BRIAN**     )
**BOTTOMS, SR.,**                             )     **Appeal No.**
                                        )     **01A01-9706-JV-00249**
       **Respondent/Appellant.**     )
                                        )
**IN THE MATTER OF:**                 )
**BRIAN SCOTT BOTTOMS, JR.**       )
**ISRAEL VAUGHN BOTTOMS**         )
**ELIJAH KEANE BOTTOMS**           )

## IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

### APPEAL FROM JUVENILE COURT OF DAVIDSON COUNTY
### AT NASHVILLE, TENNESSEE

### HONORABLE ANDREW J. SHOOKHOFF, JUDGE


JOHN KNOX WALKUP
Attorney General and Reporter

DOUGLAS EARL DIMOND, BPR No. 17953
Assistant Attorney General
425 Fifth Avenue, South
Cordell Hull Building, 2nd Floor
Nashville, TN 37243-0499
ATTORNEY FOR PETITIONER/APPELLEE


LESLIE BARRETT KINKEAD, BPR No. 13299
P.O. Box 270683
Nashville, TN 37227-0683
ATTORNEY FOR RESPONDENT/APPELLANT, AMY DIANE BOTTOMS

J. MICHAEL O'NEAL, BPR No. 014654
P.O. BOX 60125
Nashville, TN 37206
ATTORNEY FOR RESPONDENT/APPELLANT, BRIAN SCOTT BOTTOMS, SR.


## AFFIRMED AND REMANDED.


                              HENRY F. TODD
                              PRESIDING JUDGE, MIDDLE SECTION

CONCUR:
SAMUEL L. LEWIS, JUDGE
BEN H. CANTRELL, JUDGE

STATE OF TENNESSEE, DEPARTMENT    )
OF CHILDREN'S SERVICES,           )
                                  )    Davidson Juvenile
    Petitioner/Appellee,          )    File Nos.    08-04-58
                                  )                  9419-11131
VS.                               )                  9419-11130
                                  )
AMY DIANE BOTTOMS and BRIAN       )
BOTTOMS, SR.,                     )    Appeal No.
                                  )    01A01-9706-JV-00249
    Respondent/Appellant.         )
                                  )
IN THE MATTER OF:                 )
BRIAN SCOTT BOTTOMS, JR.          )
ISRAEL VAUGHN BOTTOMS             )
ELIJAH KEANE BOTTOMS              )

# O P I N I O N

Brian Bottoms, Sr., and Amy Bottoms have appealed from the judgment of the Juvenile Court, terminating their parental rights in respect to Brian Scott Bottoms, aged 7, Israel Vaughn Bottoms, aged 5, and Elijah Keane Bottoms, aged 2, and placing them in the legal guardianship of AGAPE with the right to place them for adoption.

The parties have waived oral argument and have submitted the case to this Court upon the record and briefs.

The guardian ad litem of Brian Bottoms, Sr., has not filed a brief in this Court.

The brief of appellants' contains no "Statement of the Issues Presented for Review." However, appellants' argument contains the following summary of their complaints:

        I.    The State and AGAPE failed to produce legally sufficient evidence that they made reasonable efforts to reunify the family.

        II.    The Department of Children's Services and AGAPE failed to follow State and Federal mandates to place the children in the least restrictive placement available, namely the home of the maternal grandparents.

III. The father's right to due process was violated
by the failure of the trial court to require his physical presence
at the termination of parental rights hearing.

On August 5, 1994, appellants' voluntarily placed the three subject children in the custody of AGAPE, a suitable child care and placement agency.

On August 8, 1994, appellants' signed a "plan of care" wherein they agreed to perform seven conditions of the agreement. The agreement was not performed. Appellants' did not visit the children regularly.

A number of subsequent plans of care were violated by appellants who refused assistance in arranging treatment for their own disabilities.

On February 21, 1995, the parents of Mrs. Bottoms were notified by the Court to file a petition if they desired to assume custody and care of the children. On June 12, 1995, a petition was filed. Following a study of the home of the petitioners, the petition was denied.

At the termination hearing, the father of Mrs. Bottoms testified of her violent knife attack upon him, of his fear of her and of his desire to abandon his renewed petition for custody.

On May 30, 1996, after nearly two years of intensive efforts to rehabilitate and reunite the family, the present action was filed in Juvenile Court. The cause was heard by the Juvenile Judge on October 4, 9, 10 and 14.

Experts in mental health testified of extensive mental disabilities of appellants.

At the time of the trial, Mr. Bottoms was in federal custody. His custodians declined to produce his presence at trial. A guardian ad litem was appointed for him, and he was represented by appointed counsel. The Court offered the opportunity of testimony by video disposition. A

telephone connection was arranged whereby Mr. Bottoms was enabled to hear and participate in the proceedings, and he did so.

The Technical Record consists of 456 pages.

The Transcript consists of 575 pages of testimony, 403 pages of depositions, including those of Mr. and Mrs. Bottoms, a video tape of Mr. Bottom's deposition and a storage box filled with exhibits.

On December 20, 1996, the Juvenile Judge filed a "Memorandum Opinion and Final Order" including the following:

FINDINGS OF FACT

Brian Scott Bottoms, Jr. came into state custody on March 9, 1995. He had previously been placed voluntarily with AGAPE on August 8, 1994 by the parents due to the parents' homelessness and inability to provide for the children. On March 9, 1995 the Court found Brian Scott Bottoms, Jr. to be a dependent and neglected child due to the parents' failure to secure housing and employment , their sporadic visiting, and the mother's diagnosis with a bi-polar disorder.

- - - -

Israel and Elijah came into the custody of AGAPE on August 8, 1994 as a result of being voluntarily placed there by the parents due to their homelessness, and have continuously been in AGAPE's custody since August 8, 1994.

- - - -

On June 12, 1995, a review was held. The Court found that Mrs. Bottoms had only made two visits with Brian and the other children. Mrs. Bottoms was 30 minutes late on the last visit. Israel and Elijah has been moved to another AGAPE foster home because Mr. and Mrs. Bottoms had learned of the location and telephone number of the foster home and several calls were made by someone to the home which caused the foster parents concern after Mr. Bottoms was arrested and charged with criminal activity. Mrs. Bottoms had recently checked into Parthenon Pavilion where she stay two weeks. She was discharged June 12, 1995 with a discharge note that she planned to live with her family. She stated she felt her medication had been stabilized and she could live with her parents in Springville, but did not want to if the boys could not go with her. Mrs. Bottoms had dropped out of sight for some time and her whereabouts had been unknown to AGAPE and the Department. She reappeared

about two weeks later prior to going into Parthenon. Prior to that, she had been referred to counseling, parenting classes and Mental Health Coop, but had not followed through.

- - - -

On June 3, 1996 an Order was entered ceasing visitation between Brian Bottoms, Jr. and his mother. The Court made extensive findings of facts regarding Brian's desire to cease visits and his attitude following visits. Dr. Berryman, the therapist, testified that Brian Bottoms, Jr. had inappropriate skills due to neglect and abuse. Dr. Berryman further testified that despite instructions not to discuss certain matters with Brian Bottoms, Jr., Mrs. Bottoms brought up the prohibited discussions. Mrs. Bottoms had told Dr. Berryman that she and her husband could control the weather and Mrs. Bottoms stated that Mr. Bottoms spoke to God and she could guarantee a blizzard would occur within ten days as Mr. Bottoms would cause this to happen.

Mrs. Bottoms had not visited during the five weeks immediately preceding the June 3, 1996 hearing, and had lost contact with the social worker and Brian Bottoms, Jr. This had been the most stable five weeks in Brian's life since coming into foster case. The father was not present at the June 3 hearing due to his incarceration, but was represented by counsel. The therapist testified she believed Brian Bottoms, Jr. would be harmed by going to the jail for visits with his father but he could receive letters from his father if his father would ask how he was doing and refrain from rambling statements which raise hopes and expectations. She was willing to allow the father to send letters to her that she could share with Brian Bottoms, Jr. if they were appropriate. She further testified that Brian needed consistent long term treatment and had spent most of his life disassociated from his family because of his parents' behaviors and leaving him place to place with different people and their inability to nurture him. She testified that Brian's prognosis was very guarded because of the limited emotional support he has received throughout his life and because of his parents' mental illness.

Amy York testified as to the tasks under the Plan of Care for March, 1995. The parents were in Court and Referee Walker modified the Plan of Care to accommodate requests for changes by Mr. Bottoms. She personally gave Mrs. Bottoms the Plan of Care and discussed it with both parents. The 1996 Plan of Care was given to Mr. Bottoms' attorney and Mrs. Bottoms' attorney and the Guardian ad litem. They were also provided notice or the procedures for termination of parental rights. There was substantial noncompliance by the parents to the Plan of Care. Both parents received a copy of the original plan as to all three children from AGAPE. The parents signed the Plans and acknowledged the procedures for termination.

Cindy Holton testified as to all the services offered and provided by AGAPE to the parents. The parents failed to

-5-

substantially comply with the Plans of Care as to all three children. Mrs. Bottoms admitted in her testimony that she has failed to maintain stable housing, that she had not completed a parenting course, and that she had been noncompliant with taking her medication. The testimony was also clear that Mrs. Bottoms did not schedule a three hour visit every three weeks or pay child support outlined by the plan of care. Mrs. Bottoms further failed to take her prescription daily and on time, and she failed to attend individual therapy one time a week.

Mr. Bottoms has only forwarded one letter to his son. Prior to his incarceration, Mr. Bottoms' contact with his children was sporadic. Mr. Bottoms failed to maintain stable housing. Although Mr. Bottoms has been incarcerated part of the time the children have been in care, with the children first being placed with AGAPE on August 8, 1994, he failed to maintain stable housing during the period of time he was not incarcerated. Mr. Bottoms further failed to attend regular counseling and pay child support, although based on his testimony he had sufficient income to do so.

Brian Bottoms, Jr., Elijah and Israel Bottoms have been in custody of the Department and AGAPE respectfully, for two years now. The conditions leading to custody were unstable housing, no stable employment, and Mrs. Bottoms' mental health issues. Once in custody Mr. Bottoms' mental health has become an obstacle to reunification.

The testimony established with respect to Mrs. Bottoms a long history of mental illness, failure to follow through with therapy, noncompliance with needed medication and episodes of disorientation, suicidal intention; and aggressive behavior. Mrs. Bottoms suffers from a Bipolar disorder which cannot be managed effectively because of her failure to comply with treatment. She has compounded her problems by use of illegal drugs. Based on the testimony of those who have treated and evaluated has as well as her testimony and those of her parents and Mr. Bottoms, it is not likely that Mrs. Bottoms would be able to effectively parent her children due to her severe level of mental illness and her inability or unwillingness to follow through with treatment.

Mr. Bottoms failed to maintain stable housing. He rejected available low cost or subsidized housing that was within his economic resources to obtain. Mr. Bottoms was unavailable at the time of trial and is still unavailable. He testified he does not know how much longer he will be detained in Federal custody. He has been declared mentally incompetent to stand trial.

As to Mr. Bottoms, a psychological examination was introduced through Dede Wallace dated January 24, 1995. During the examination Mr. Bottoms denied the need for mental health treatment. He stated that he had seen

extraterrestrial beings and has had encounters with them and may have been abducted by them. He admitted a history of marijuana, alcohol and cocaine use. He stated that he has to do everything for his wife and that he had only seen his children twice since August, 1994. He stated that his wife goes after him with knives and throws manic depression fits. He stated that he had been babysitting for his wife for six years and lost jobs because she goes to his job sites.

Dr. Morgan testified on August 15, 1996 that she had performed the January 24, 1995 psychological and Mr. Bottoms was diagnosed at that time with Bipolar Disorder. She stated that she recommended a psychiatric evaluation and individual therapy as well as a formal parenting evaluation. She testified that based on the evaluation and meeting with Mr. Bottoms, this diagnosis would impose severe limitations on his ability to parent or provide stability. She stated that because of his own personality style there are significant questions regarding his ability to provide a supportive and stable environment for his children.

Dr. John Griffin, who was retained by Mr. Bottoms' criminal lawyer, performed an evaluation regarding Mr. Bottoms competency to stand trial. Initially when Dr. Griffin saw Mr. Bottoms in July, 1995 his diagnostic impression was personality disorder. On March 18, 1996, at the request of Buford Bates, attorney for Mr. Bottoms, Dr. Griffin again evaluated Mr. Bottoms. At that time, his diagnostic impression was psychotic disorder and personality disorder. He did not believe Mr. Bottoms was competent to stand trial at that time. He saw Mr. Bottoms again on April 25, 1996 as a result of being subpoenaed to court by Mr. Bottoms. Dr. Griffin testified that children being raised by parents with this diagnosis are predisposed to having problems of their own. He testified that Mr. Bottoms as of April, 1996 had significant psychiatric problems that would, in his opinion, have significant detrimental effects on the children.

Elijah and Israel are in a pre-adoptive foster home. The foster home for Brian Bottoms, Jr. has not ruled out adoption. Elijah and Israel are doing very well in their respective home, and are thriving and very happy. Brian, Jr. had made great progress, given the significant difficulties he has had and is doing considerably better since the suspension of contact with his parents.

Dr. Berryman testified that Brian, Jr. is emotionally attached to the current foster parents. Dr. Berryman testified Brian, Jr. has an attachment disorder, and he avoids parental issues and doesn't bring them up. She testified as to his progress since the visits were ceased with his mother at the June 3, 1996 hearing. She testified that she did not believe he could be successfully transitioned back to his parents but he could transition to another home if the current placement turns out not to be adoptive.

# CONCLUSIONS OF LAW

The proof in this case establishes by clear and convincing evidence grounds for termination pursuant to T.C.A. Section 36-1-113(g)(3).

- - - -

Based upon the proof presented, the Court finds that grounds for termination have been established and that it is in the best interest of the children that the termination petition be granted.

It is hereby Ordered that the parental rights of Brian Bottons, Sr. and Amy Bottoms with respect to Brian, Jr., Israel and Elijah Bottoms be and hereby are terminated and the child, Brian, Jr., is hereby placed in the legal guardianship of the Tennessee Department of Children's Services, and the children, Israel and Elijah Bottoms are hereby placed in the legal guardianship of AGAPE with the right to place the children for adoption.

TCA § 36-1-113(g) provides:

(g) Termination of parental or guardianship rights may be based upon any of the following grounds:

(1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred;

(2) There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan or a plan of care pursuant to the provisions of title 37, chapter 2, part 4;

(3)(A) the child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(i) The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's return to the care of the parent(s) or guardian(s), still persist;

(ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be returned to the parent(s) or guardian(s) in the near future; and

(iii) the continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a stable and permanent home.

**First Issue**

**Sufficiency of Evidence**
**of Efforts to Reunify Family**

The evidence overwhelmingly supports the findings of the Trial Court. No basis is found for modification or reversal of said findings.

**Second Issue**

**Failure to Place Children with Grandparents**

The record clearly indicates the unwillingness of one grandparent and the inability of both to satisfactorily care for the children. No basis is shown for reversal of the denial of the petitions of the grandparents.

**Third Issue**

**Violation of Due Process in Respect to Father**

A prisoner does not forfeit his constitutional right to access to civil courts by his conviction and incarceration, but a prisoner will not normally to allowed to appear personally in a civil case absent unusual circumstances. *Whisman v. Byrd*, Tenn. 1975, 575 S.W.2d 154. TCA § 41-21-304 permits a prisoner to testify by deposition.

In the present case, the prisoner was in the custody of federal officials who declined to allow him to appear in court.

No merit is found in any of the issues or arguments of the appellants. The judgment of the Juvenile Court is affirmed. Costs of this appeal are assessed against the appellants.

The cause is remanded to the Juvenile Court for any necessary further proceedings.

## AFFIRMED AND REMANDED.

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION


CONCUR:


_____
SAMUEL L. LEWIS, JUDGE


_____
BEN H. CANTRELL, JUDGE